**Gary GANGLOFF, Plaintiff,**

v.

**Officer POCCIA, Officer Cootware, Officer Flowers, Officer Ward, Sergeant Blewitt, Sergeant T.A. Duncan, Inspector Charlwood, W.B. Clift, Officer Severson, in their individual and official capacities, Defendants.**

No. 94–279–Civ–FtM–21D.

United States District Court,
M.D. Florida,
Ft. Myers Division.

June 13, 1995.

Gary Gangloff, Hardee Correctional Institution, Bowling Green, FL, pro se.

Collin J. Hite, Atty. General's Office, Dept. of Legal Affairs, Hollywood, FL, for defendants.

## ORDER

NIMMONS, District Judge.

*Pro se* prisoner Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 on September 6, 1994. Plaintiff, who was incarcerated at Charlotte Correctional Institution at the time the alleged events occurred, claims that:

19. On September 22, 1993 Plaintiff was and had been while on administrative confinement being utilized as an inmate orderly in housing H5–B to clean B-squad and distribute meal trays to inmates on administrative confinement.

20. On September 22, 1993, at approximately 9:30 a.m., defendant Officer Poccia, and Plaintiff, began distributing cleaning supplies for inmates on confinement in H5–B to clean their respective cells.

21. During the time cell cleaning was taking place cell doors were opened by defendant Officer Poccia, to facilitate cleaning and distribution of supplies.

22. While the cell doors were opened Plaintiff observed two inmates obstructing the locking mechanism in their cell doors by stuffing them with paper and brought this to the attention of defendant, Officer Poccia.

23. Later that day cells 109, 110, 111, and 112, in H5–B were flooded and defendant Officer Cootware, while acting under the supervision of defendant Sergeant Blewitt, opened the doors of these cells to permit the inmates housed therein to mop the water from the cell floors.

24. While the cell doors were open the inmate in cell H5–B–111 stuffed the locking mechanism with paper to prevent the cell door from locking when closed (see exhibits # 1 and # 2, attached hereto and incorporated herein by reference).

25. When the inmates in Cells 109, 110, 111, and 112, completed mopping their cells defendant Officer Cootware neglected to verify that the cell doors were in fact locked.

26. At 4:00 p.m. defendants Sergeant Duncan, Officer Flowers and Officer Ward, replaced the staff working in H5–B.

27. While the shift was changing and an inmate head-count was being conducted, Plaintiff layed down in his bed to rest prior to his having to distribute meal trays. Since Plaintiff was an orderly in H5–B his cell door was left open so as to permit him to be available if needed by any officer.

28. While sleeping Plaintiff was awakened by inmate Terry Dean who was housed in H5–B–111. Inmate Dean was standing over Plaintiff with a mop wringer in one hand and a cup filled with substance in the other hand. At the moment of Plaintiff's opening his eyes inmate Dean threw the substance into Plaintiff's face, temporarily blinding Plaintiff and then hit Plaintiff with the mop wringer. Plaintiff instinctively jumped up from the bed and grabbed inmate Dean, pushing him into the corner of the cell, and in the course of the ensuing struggle the cell door was locked. Since Plaintiff could not see he held inmate Dean in a bear hug fashion and yelled for help (see exhibits # 3

through # 6, attached hereto and incorporated herein by reference).

29. When another inmate orderly, Arthur London, approached Plaintiff's cell door and saw what the commotion was about he signalled for defendant Sergeant Duncan to open Plaintiff's cell door (see exhibits # 3 and # 6).

30. When the cell door was unlocked Plaintiff pushed inmate Dean aside and ran from the cell into the open day room (see exhibits # 1 through # 6).

31. Inmate Dean then fled from Plaintiff's cell and returned to his own cell (I.E. H5–B–111), locking the door behind him (see exhibits # 1 through # 6).

32. Defendants Officer Flowers and Officer Ward entered H5–B and Plaintiff appraised [sic] them of what had occurred. Defendant Sergeant Duncan then had Plaintiff escorted to the institutional clinic (see exhibit # 7, attached hereto and incorporated herein by reference).

33. After rinsing Plaintiff's eyes at the institutional clinic, Medical Department personnel had Plaintiff transported to the Fawcett Memorial Hospital for further treatment.

34. At the hospital Plaintiff's eyes were again washed and he was prescribed eye drops and medication for pain. Eye patches were put on both eyes and he was returned to Charlotte Correctional Institution.

35. The Medical Department personnel at Charlotte Correctional Institution kept Plaintiff on observation in the institutional clinic for 24 hours prior to returning him to his cell in H5–B.

36. Plaintiff wore the right eye patch for 24 hours and continued to wear the left eye patch for approximately one week.

37. Following Plaintiff's return to Charlotte Correctional Institution from Fawcett Memorial Hospital he continuously complained to Medical Department personnel of irritation in his eyes and headaches for a significant period of time.

38. On September 24, 1993, Plaintiff declared a psychological emergency and requested to see someone from the Psychological Department. Defendant W.B. Clift, psychologist, responded to Plaintiff's cell and after speaking with Plaintiff advised him that he would be scheduled to see a psychiatrist on September 27, 1993 about his complaints of anxiety, stress, nightmares of inmate Dean assaulting him, paranoia about not being able to sleep without being assaulted, and exhibited concerns about having a nervous breakdown (see exhibit # 8, attached hereto and incorporated herein by reference).

39. On September 27, 1993, Plaintiff was not taken to see the psychiatrist and he declared another psychological emergency. When defendant W.B. Clift came to Plaintiff's cell in response he advised Plaintiff that due to the institution's being under-staffed the earliest the psychiatrist could see him would be on October 22, 1993 (see exhibit # 9, attached hereto and incorporated herein by reference).

40. Prior to being treated by psychologist or psychiatrist at Charlotte Correctional Institution Plaintiff was transferred from Charlotte Correctional Institution to South Florida Reception Center, which is located at P.O. Box 02–8538, Miami, Florida 33102.

41. At the time of Plaintiff's being transferred from Charlotte Correctional Institution the Institutional Inspector, defendant Inspector Charlwood, when questioned by Plaintiff, admitted knowing nothing of the incident described above and proceeded to obtain a written statement from Plaintiff delineating the course of events.

42. After arrival at South Florida Reception Center Plaintiff declared a psychological emergency and was escorted to the institutional clinic where he was refused treatment by Medical Department personnel who instructed him to send a Inmate Request (DC3–005 form) to Psychology Department for an appointment.

43. During the few days that Plaintiff was housed at South Florida Reception Center in an open dormitory he experienced continuous headaches, anxiety, nervousness, and was not able to sleep due to

nightmares and paranoia about being assaulted while sleeping.

44. The eye doctor at South Florida Reception Center flushed Plaintiff's eyes and tested Plaintiff's vision to be 20/40. He instructed Plaintiff to wear an eye patch over his left eye.

45. After arrival at Hendry Correctional Institution the eye doctor following examination informed Plaintiff that he had a waxy build-up on his eyes, prescribed medication, and instructed Plaintiff to wash his eyes with warm water each morning.

46. An inquiry directed to the Classification Department at Hendry Correctional Institution indicates that no precautions have been taken to avoid Plaintiff's being housed at the same facility with inmate Terry Dean (see exhibit # 10, attached hereto and incorporated herein by reference).

Plaintiff claims that Defendants had a duty to keep him safe and that they were negligent in their duty.

Plaintiff seeks a declaratory judgment that Defendants' alleged actions amounted to deliberate indifference to his constitutional rights; a preliminary and permanent injunction against Defendants enjoining them from housing Plaintiff at any facility where inmate Terry Dean is or may be housed; compensatory damages, punitive damages, attorney's fees and costs, and "such other and further relief that this court deems just and proper."

Defendants filed a motion to dismiss for failure to state a claim on January 6, 1995 (Doc. No. 18). Plaintiff responded on January 19, 1995 (Doc. No. 19). On January 27, 1995, the Court warned Plaintiff of the consequences of the Court's granting the motion to dismiss and ordered him to file a response. Plaintiff filed the court-ordered response on February 15, 1995 (Doc. No. 21).

### Standard for Dismissal

■ In determining whether to grant a Fed.R.Civ.P. 12(b)(6) motion, the Court considers the allegations in the complaint. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to Plaintiff and its allegations are taken as true. 5 C. Wright and A. Miller, *Federal Practice and Procedure* § 1357 (1969). A motion to dismiss will be denied unless it appears beyond all doubt that Plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Luckey v. Harris*, 860 F.2d 1012, 1016 (11th Cir.1988), *reh'g denied en banc*, 896 F.2d 479 (11th Cir.1989), *and cert. denied*, 495 U.S. 957, 110 S.Ct. 2562, 109 L.Ed.2d 744 (1990). In the case of a *pro se* action, moreover, the Court should construe the complaint more liberally than it would formal pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam).

### Discussion

#### A. Applicable Law

■ In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

1. whether the conduct complained of was committed by a person acting under color of state law; and

2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Tillman v. Coley*, 886 F.2d 317, 319 (11th Cir.), *reh'g denied en banc*, 893 F.2d 346 (11th Cir.1989); *Barfield v. Brierton*, 883 F.2d 923, 934 (11th Cir.1989); *Cornelius v. Town of Highland Lake, Alabama*, 880 F.2d 348, 352 (11th Cir.), *reh'g denied en banc*, 887 F.2d 1093 (11th Cir.1989), *cert. denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).

#### Duty to Protect Inmates from Each Other

■ A civil rights case requires an affirmative causal connection between Defendants and the alleged deprivation of constitutional rights. *Williams v. Bennett*, 689 F.2d 1370 (11th Cir.1982), *cert. denied*, 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983).

State officials have a duty, under the Eighth Amendment prohibition of cruel and unusual punishment, to protect inmates from each other. This duty, however, does not lead to absolute liability because the Eighth Amendment addresses only punishment. "Whether an injury inflicted by fellow prisoners ... is 'punishment' depends on the mental state of those who cause or fail to prevent it." The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference or criminal recklessness. Negligence, even gross negligence, is not enough. "[T]o sustain his constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm."

*King v. Fairman,* 997 F.2d 259, 261 (7th Cir.1993) (citations omitted); *See Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

 "In order to state a 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett,* 689 F.2d at 1380 (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir.1981). Plaintiff must allege deliberate indifference on the part of the Defendants to his need for reasonable protection from violence. Plaintiff must allege that the prison authorities had foreknowledge of the attack or of prior threats on Plaintiff or that they tacitly or expressly approved or participated in such beatings or attacks. *See Hopkins v. Britton,* 742 F.2d 1308, 1310 (11th Cir.1984). *See also Jones v. Phyfer,* 761 F.2d 642, 646 (11th Cir.1985). Absent such allegations, a section 1983 cause of action for failure to protect cannot be sustained.

The Eleventh Circuit has stated:

The eighth amendment's prohibition of "cruel and unusual punishments" requires that punishment be compatible "with 'the evolving standards of decency that mark the progress of a maturing society.' " *Estelle v. Gamble,* 429 U.S. 97, 102, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976) (quoting *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958)). Thus, it is well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates. *Gullatte v. Potts,* 654 F.2d 1007, 1012 (5th Cir.1981). *See also Harmon v. Berry,* 728 F.2d 1407, 1409 (11th Cir.1984) (per curiam); *Jones v. Diamond,* 636 F.2d 1364, 1373 (5th Cir.1981) (en banc). However, "[t]his does not mean that the constitutional rights of inmates are violated every time a prisoner is injured. It would not be reasonable to impose such an absolute and clearly unworkable responsibility on prison officials." *Gullatte,* 654 F.2d at 1012. " 'In order to state a 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.' " *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982) (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir. 1981), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983)). *See also Martin v. White,* 742 F.2d 469, 474 (8th Cir.1984) ("[P]rison officials may be liable where they are 'deliberately indifferent to [a prisoner's] constitutional rights, either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates.' ") (quoting *Branchcomb v. Brewer,* 669 F.2d 1297, 1298 (8th Cir.1982)).

*Zatler v. Wainwright,* 802 F.2d 397, 400–01 (11th Cir.1986).

 Negligence is not actionable under 42 U.S.C. § 1983. *Davidson v. Cannon,* 474 U.S. 344, 347, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986); *Daniels v. Williams,* 474 U.S. 327, 330–31, 106 S.Ct. 662, 664–65, 88 L.Ed.2d 662 (1986); *Bailey v. Board of County Commissioners,* 956 F.2d 1112, 1121

n. 8 (11th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992).

### Duty To Provide Medical Care

■ Although deliberate indifference to a serious medical need is a cognizable section 1983 claim, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), not all complaints concerning medical treatment are actionable:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Id.* at 106, 97 S.Ct. at 292 (footnote omitted).

■ The legal conclusion of deliberate indifference must rest on facts clearly evincing "wanton" actions on the part of the defendants. The Supreme Court has had occasion to consider the common law meaning of "wanton" in some detail:

> "Wanton means reckless—without regard to the rights of others.... Wantonly means causelessly, without restraint, and in reckless disregard of the rights of others. Wantonness is defined as a licentious act of one man towards the person of another, without regard to his rights; it has also been defined as the conscious failure by one charged with a duty to exercise due care and diligence to prevent an injury after the discovery of the peril, or under circumstances where he is charged with a knowledge of such peril, and being conscious of the inevitable or probable results of such failure." 30

American and English Encyclopedia of Law 2–4 (2d ed. 1905) (footnotes omitted). *Smith v. Wade,* 461 U.S. 30, 39–40 n. 8, 103 S.Ct. 1625, 1632 n. 8, 75 L.Ed.2d 632 (1983).

■ However, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. at 105–06, 97 S.Ct. at 292.

### B. *Defendants' Allegations*

In their motion to dismiss, Defendants claim that Plaintiff fails to make the requisite causal connection between Defendant Poccia and the alleged attack. They allege that Plaintiff merely states that he noticed inmates obstructing the lock to a cell and informed Defendant Poccia. They point out that this alleged incident is not connected to the later incident during which inmate Dean was able to prevent his cell door from locking. They further claim that Plaintiff's complaint makes it clear that Defendant Poccia had gone off duty when the cells were flooded and inmate Dean was able to obstruct his cell door lock. They argue that if Defendant Poccia was not on duty then he could not have known of the danger and thus could not have been deliberately indifferent. They allege that the incident when Defendant Poccia was present does not appear to be connected to the incident later in the day.

They also claim that Plaintiff does not state a cause of action against Defendants Cootware and Blewitt because Plaintiff's allegations against these Defendants fail to show that they acted with deliberate indifference.[1] Defendants claim that the failure to check the cell doors does not create the causal connection required to state a Section 1983 cause of action.

They also claim that Plaintiff's allegation that Defendant Cootware violated Plaintiff's rights when he let out the inmates in the flooded cells does not demonstrate deliberate indifference to Plaintiff's safety because, as a

---

**1.** Plaintiff claims that when four cells were flooded these two officers allowed the inmates out of their cells in order to mop up the substance. When the cell doors were open, Plaintiff claims that inmate Dean hindered his cell door lock from closing and then exited his cell and attacked Plaintiff. Plaintiff alleges that these Defendants were negligent for not checking the cell doors. Complaint, p. 14–15.

houseman, Plaintiff was exposed to the other inmates in administrative confinement throughout the day and Plaintiff does not allege other attacks or pervasive problems.

Defendants point out that Defendants Duncan, Flowers and Ware replaced Blewitt and Cootware at the afternoon shift change and that it was during the shift change and inmate count that Plaintiff was allegedly attacked by inmate Dean. Defendants claim that Plaintiff merely makes conclusory allegations that these Defendants were negligent in not protecting him. Complaint, pp. 15–18. Defendants claim that Plaintiff does not make any allegations against these Defendants that rise to the level of a constitutional violation; he does not make any factual allegations that Defendants were aware of the possible tampering with cell locks, or that they were aware of other facts indicating that Plaintiff was at risk, and, therefore, there is no causal connection between the attack and Defendants necessary for establishing deliberate indifference.

As to Defendant Charlwood, Defendants claim that there is no causal connection between Defendant Charlwood and the alleged attack. Defendants point out that Plaintiff's only claim against Defendant Charlwood is that he did not make a recommendation to the State Attorney's Office regarding possible prosecution of Defendant Dean. They claim that whether Defendant Charlwood did or did not contact the State Attorney's Office is irrelevant because there is no due process right between the victim of a crime and the prosecution of the alleged criminal. Furthermore, they claim that Plaintiff may seek relief through a civil lawsuit against the alleged tortfeasor, inmate Dean.

Finally, they claim that Plaintiff's claims against Defendant Severson do not rise to the level of a constitutional violation. Defendants claim that inmates being specially reviewed against one another is a wholly discretionary matter used by the classification department, that it is used only in very spe-cific situations, and that it is not even implemented in the Florida Administrative Code. They claim that Plaintiff's allegation that he may be incarcerated at the same institution with inmate Dean in the future does not establish the requisite causal connection to support the violation of any right. Motion to Dismiss, pp. 4–6.

Defendants also allege that Defendant Clift responded to Plaintiff's psychological emergency and scheduled him for an appointment. They point out that Defendant Clift responded to a second psychological emergency and informed Plaintiff that it would take some time to arrange an appointment for Plaintiff with a psychological medical staff member. However, as Defendants allege, prior to meeting with a psychological staff member, Plaintiff was transferred to the South Florida Reception Center (SFRC). Defendants point out that they have no control over SFRC and the alleged lack of treatment plaintiff received there.

### C. Plaintiff's Response

In response,[2] Plaintiff claims that Defendant Poccia, as an experienced officer, should have known that Plaintiff's telling him about inmate Dean's obstructing his cell door would result in inmate Dean's retaliation against Plaintiff and that he should have informed the on-coming officers about the incident.[3] Plaintiff also claims that Defendant Poccia remained on duty until 4:00 p.m., while the alleged incident occurred between 3:00 and 3:30 p.m. Plaintiff claims that Defendants were deliberately indifferent to his medical needs by not placing the Plaintiff's need for psychological assessment in his files at the time of transfer to South Florida Reception Center.

Plaintiff makes the bare unsupported allegation that Defendant Severson is refusing special review of inmate Dean in retaliation for the grievances Plaintiff filed.

Plaintiff further claims[4] that his Eighth Amendment right to be free from cruel and

---

2. See Document Number 19.

3. Plaintiff does not claim that inmate Dean knew that Plaintiff told Defendant Poccia about Dean's obstructing his cell door.

4. See Document Number 21.

unusual punishment was violated when Defendants allowed inmates to clean their cells and failed to use the same cleaning security procedures they use when a houseman cleans a cell.[5] He claims that Defendants were not performing a discretionary act when they allowed inmates out of their cells to clean up the flooding problems. He claims that Defendants did not adhere to their own rules of security. Plaintiff cites *Wilson v. Seiter,* 501 U.S. 294, 298–303, 111 S.Ct. 2321, 2324–26, 115 L.Ed.2d 271 (1991) in support of his claims.[6]

After reading Plaintiff's complaint in a liberal fashion, the Court finds that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief for the following reasons.

### Official Capacity Claims

■ A suit against a government official in his official capacity is really a suit against the state. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

> [S]tate officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. By contrast, officers sued in their personal capacity come to court as individuals.

**5.** Plaintiff is a houseman. He claims that when he cleans, the inmates must first be handcuffed and then removed from the cell. Plaintiff claims that Defendants did not handcuff the inmates who were allowed out of their cells to clean up the flooding.

**6.** *Wilson v. Seiter,* 501 U.S. 294, 303, 111 S.Ct. 2321, 2327, 115 L.Ed.2d 271 (1991) applied the deliberate indifference standard to conditions of confinement. The *Wilson* Court stated:

> Since, we said, only the " 'unnecessary *and wanton* infliction of pain' " implicates the Eighth Amendment, *id.,* at 104, 97 S.Ct., at 291 (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct., 2909, 2925, 49 L.Ed.2d 859 (1976) (joint opinion) (emphasis added)), a prisoner advancing such a claim must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. 429 U.S., at 106, 97 S.Ct., at 292. "It is *only* such indifference" that can violate the Eighth Amendment, *ibid.* (emphasis added); allegations of "inadvertent failure to provide adequate medical care," *id.,* at 105, 97 S.Ct., at 292, or of a "negligent ...

*Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991) (citing *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304).[7] Defendants in the present case are employees of the Department of Corrections. Therefore, they enjoy Eleventh Amendment immunity from suit for damages in their official capacity. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (citations omitted).

■ However, state officers sued in their individual capacities are "persons" within the meaning of section 1983. The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under section 1983 solely by virtue of the "official" nature of their acts. *Hafer,* 502 U.S. at 31, 112 S.Ct. at 365.

### Claims Against Defendants Poccia, Cootware, Flowers, Ward, Blewitt and Duncan

■ Plaintiff fails to allege a factual basis to show that Defendants violated his constitutional rights for failure to prevent inmate Dean's attack. Plaintiff has not shown that Defendants' actions constituted deliberate indifference. Plaintiff has not alleged facts to show that "the prison authorities had foreknowledge of the attack or of

diagnos[is]," *id.,* at 106, 97 S.Ct., at 292, simply fail to establish the requisite culpable state of mind.

· · · · · ·

Thus, as retired Justice Powell had concluded: "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle.*"
With these subjective and objective components, courts considering a prisoner's Eighth Amendment claim must determine whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992) (citation omitted).

**7.** In *Hafer,* the Defendant argued that the Eleventh Amendment bars personal capacity suits against state officials in federal court.

prior threats on Plaintiff, or that they tacitly or expressly approved or participated in" the attack. *Hopkins v. Britton,* 742 F.2d at 1310. Plaintiff's cursory statements that "Plaintiff informed Defendant Poccia of a security hazard where inmates were attempting to obstruct locking mechanisms and inmates were obviously aware that Plaintiff informed Officers, thereby showing the 'recklessness in criminal-law sense' to know that any informant per say is labeled 'snitch' by general inmate population and is more subjectable to violence by those informed on"[8] does not meet the element of foreknowledge of an attack. Plaintiff does not claim that inmate Dean had ever threatened him, or even that inmate Dean knew about Plaintiff's disclosure.

 Furthermore, Plaintiff has failed to allege any facts to support a claim that Defendants had a culpable state of mind relative to Plaintiff's security. As Plaintiff himself states, "The non-action of Defendant Poccia in not advising his relief officers of the attempts of obstructing their locks in fact negligence of duty, and proves negligence toward others safety, whether it be the safety of fellow officers or of inmates, thereby this negligence is therefore a cause of action. If not for this negligence the assault may never have occurred."[9]

At most, Plaintiff Gangloff alleges a claim for negligence against these Defendants. Because Plaintiff has not alleged facts to support the violation of a constitutional right, his complaint against Defendants Poccia, Cootware, Flowers, Ward, Blewitt, and Duncan does not meet the second element of a section 1983 action and must be dismissed.

### Claims Against Defendant Charlwood

Plaintiff complains that Defendant Charlwood's negligence "in performing his duties to investigate acts complained of herein resulted in his failure to comply with procedures outlined in F.A.C. 33–22.004(3)."

Chapter 33–22.004(3) of the Florida Administrative Code reads as follows:

33–22.004 Reporting Disciplinary Infractions.

(3) Criminal Violations. When it appears that laws of the state have been violated, to the extent criminal prosecution is warranted, the State Attorney shall be notified. If the State Attorney decides to prosecute, his office shall be consulted as to the suitability of disciplinary action being taken by the institution prior to the prosecution being concluded.

(a) If the State Attorney has no objection, formal disciplinary action shall proceed.

(b) If the State Attorney objects, a disciplinary report shall be written, if appropriate, an investigation completed, if possible and the file flagged so that the disciplinary process can be completed once the outside charges have been received.

Plaintiff claims that under chapter 33–22.004(3), Defendant Charlwood's lack of action deprived him of his constitutional rights as a victim and equal protection of the laws.

 Plaintiff's complaint against Defendant Charlwood does not rise to the level of a constitutional violation. Defendant Charlwood had not been informed of the incident; therefore, he would not have known to investigate. Furthermore, chapter 33–22.004(3) does not create a protectible liberty interest in having a criminal action brought against inmate Dean. *See Hewitt v. Helms,* 459 U.S. 460, 468, 471, 103 S.Ct. 864, 870, 871, 74 L.Ed.2d 675 (1983) (Statutes and regulations governing daily operation of a prison system do not confer any liberty interest in and of themselves.) Nothing prevented Plaintiff from contacting the Attorney General on his own, or from filing a state tort action against inmate Dean.[10] Therefore, Plaintiff's claim against Defendant Charlwood will be dismissed.

---

8. See Document Number 21, p. 5.

9. See Document Number 21, p. 6.

10. Inmate Dean received two disciplinary reports, one for attempted assault and one for having paper in his lock. (See statement of Sgt. T.A. Duncan, attached to Plaintiff's complaint, dated September 27, 1993).

### Claims against Defendant Clift

Plaintiff's allegations against Defendant Clift do not rise to the level of deliberate indifference. Defendant Clift answered Plaintiff's psychological emergency request and provided all of the care that he was able to provide. Defendant Clift had no control over SFRC's procedures regarding psychological emergencies.

Although Plaintiff makes the bald allegation that Defendants did not place "the Plaintiff's need for psychological assessment in his files at the time of transfer to be reviewed at SFRC concerning his psychological profile," he has not alleged any facts to show that the records were not in his medical file. It appears that Plaintiff assumes that his records were not in the medical file because he did not receive immediate treatment at SFRC. He does not state that SFRC personnel told him that his records were not in his medical file. Plaintiff was told that he would have to wait for an appointment at Charlotte Correctional Institution because of understaffing. There is no reason to believe that there would not be a waiting period at SFRC also. He was not refused psychological treatment. He was told to make an appointment.

Plaintiff has not alleged that Defendant Clift was in charge of Plaintiff's medical records or that Defendant Clift was the person who allegedly did not include the psychological reports in his medical file. Because Plaintiff's claims against Dr. Clift do not allege violation of a constitutional right, the claims will be dismissed.

### Claims Against Defendant Severson

Plaintiff's claim that "Officer Severson's negligence to take preventative measures to assure Plaintiff's not being housed at same facility with inmate Terry Dean violated Plaintiff's constitutional rights to be free from fear of threat or sudden death, and equal protection of the laws" does not reach the level of a constitutional violation. Plaintiff's allegation that he may be incarcerated at the same institution with inmate Dean in the future does not establish the requisite causal connection to support the violation of any right.

Plaintiff has not alleged any factual basis for his claim that Defendant Severson is refusing special review of inmate Dean in retaliation for the grievances Plaintiff filed. Plaintiff filed copies of his grievances. Plaintiff has not filed any grievances against Defendant Severson. Plaintiff did file a grievance in which he asked whether there had been any special review related to inmate Dean. However, he did not file any further grievances seeking such a review.[11] Because Plaintiff's allegations against Defendant Severson do not rise to the level of a constitutional violation, the claims will be dismissed.

### Injunctive Relief Claims

The four-factor test for granting a preliminary injunction in this circuit is as follows:

> To be entitled to injunctive relief, the moving party must establish that (1) there is a substantial likelihood that he ultimately will prevail on the merits of the claim; (2) he will suffer irreparable injury unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the public interest will not be harmed if the injunction should issue.

*Cate v. Oldham*, 707 F.2d 1176, 1185 (11th Cir.1983) (citations omitted). Plaintiff has failed to prevail on his claim and he has failed to convince the Court that he will suffer irreparable injury unless the injunction issues. "Because a preliminary injunction is 'an extraordinary and drastic remedy,' its grant is the exception rather than the rule, and Plaintiff must clearly carry the burden of persuasion." *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983) (quoting *Texas v. Seatrain International, S.A.*, 518 F.2d 175, 179 (5th Cir.1975)).

---

**11.** Plaintiff may not have exhausted his administrative remedies relative to this claim. Exhaustion of administrative remedies pursuant to Florida Administrative Code Chapter 33–29 is required prior to pursuing a civil rights action concerning events occurring on or after March 25, 1992, in the Florida Department of Corrections.

Furthermore, federal courts are normally reluctant to interfere with matters of internal prison administration, *Hooks v. Kelley*, 463 F.2d 1210 (5th Cir.1972), and must recognize that they are ill-equipped to involve themselves in the administration of the prison system. *Newman v. Alabama*, 683 F.2d 1312, 1320 (11th Cir.1982), *cert. denied*, 460 U.S. 1083, 103 S.Ct. 1773, 76 L.Ed.2d 346 (1983). The very nature of lawful incarceration "brings about the necessary withdrawal or limitation of many privileges and rights...." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974), (quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 1060, 92 L.Ed. 1356 (1948)). As the Supreme Court stated in *Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979) (citations omitted):

> [T]he problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.

This Court declines to enter an order requiring Defendants to incarcerate Plaintiff at any particular institution.

In accordance with the opinion above, the Court orders:

1. That Defendants' motion to dismiss (Doc. No. 18) is granted.

2. That Plaintiff's request for injunctive relief is denied.

The Clerk is directed to close this file.

DONE AND ORDERED.