Jerry T. **HOPKINS, Plaintiff-Appellant,**

v.

**Robert G. BRITTON, etc., et al., Defendants-Appellees.**

No. 83–7439.

United States Court of Appeals, Eleventh Circuit.

Sept. 27, 1984.

Jack W. Smith, Dothan, Ala., for plaintiff-appellant.

Thomas R. Allison, R. David Christy, Montgomery, Ala., for defendants-appellees.

Before KRAVITCH and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

ALLGOOD, District Judge:

On October 16, 1979, the appellant, Jerry T. Hopkins, was attacked and seriously injured during a prison riot at Fountain Correctional Center where he was incarcerated. Hopkins brought this action under 42 U.S.C. § 1983, alleging that prison officials failed to provide him with adequate protection from more violent inmates and then failed to come to his aid after he had been attacked. Hopkins also charged officials with failing to provide him with the therapy prescribed by his physician.

The case was referred to a Magistrate who, after conducting an evidentiary hearing at which inmates and prison officials testified, recommended judgment for the defendants to which Hopkins filed objections. Thereafter the recommendations of the Magistrate were adopted as the opinion of the court and this appeal followed.

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

The incident which culminated in injuries to the appellant began when [some two to three weeks before the actual riot] Buddy Winstead, a white inmate, and Phillip Stacy, a black inmate, got into an argument over a pawned watch. The controversy continued until Winstead attacked and stabbed Stacy on the night of October 16th. After the attack on Stacy, Winstead ran down the hall, stabbed three more inmates and took a guard hostage. As soon as black inmates learned of the attack on Stacy they went looking for Hopkins. Hopkins and Winstead had been friends for a number of years and speculation is that he was attacked and beaten because of that friendship. It was not until the riot had been put down that Hopkins was found unconscious. Estimates are that the entire incident lasted less than thirty minutes. Hopkins was hospitalized in critical condition. His injuries left him partially paralyzed and with permanent damage to one eye.

■ Hopkins contends the prison officials failed to provide for his safety and they knew or should have known of the violent propensities of Winstead. At the time of the disruption 630 prisoners were housed at Fountain and 10 guards were on duty. The Magistrate found that the guards acted quickly and efficiently to restore order. Hopkins argues that the state failed to provide enough guards to adequately control the prison population and squelch outbreaks of violence. He also criticizes the guards for not using tear gas or sounding alarms to break up the riot. There is no reason to believe and the appellant provides no support for the contention that such action would have calmed the riot. It is just as reasonable to assume that either would have escalated the violence. The entire incident was under control in less than thirty minutes which in itself is testimony to the efficiency of the guards' actions.

■ As to Hopkins personal safety, when prison officials are or should be aware of a danger posed to an inmate, they are obligated to take all reasonable steps to protect him, and the failure to do so may be an actionable constitutional wrong. *Gullatte v. Potts*, 654 F.2d 1007 (5th Cir. Unit B, 1981). "This does not mean that the constitutional rights of inmates are violated every time a prisoner is injured." *Id.* at 1012. The Magistrate found, and the record clearly supports those findings, that prison officials had no reason to know that Hopkins was in any danger from any inmate. In fact, Hopkins himself testified that he was totally surprised by the attack on him. The appellant failed to make a showing that prison officials had the requisite knowledge which would provide the basis for his constitutional claim.

■ Hopkins was seriously injured and underwent extensive treatment at the University of South Alabama Medical Center. He was returned to the hospital at Fountain after about three weeks and instructed to begin walking as much as he could up to three miles a day. He testified that he was allowed to walk as much as he wanted to within the hospital ward. He contends, however, that because of the small area in which he could walk, not allowing him to walk outside, amounted to cruel and unusual punishment and a denial of prescribed medical treatment.

The United States Supreme Court in *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), set forth the following standard:

In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical need. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id.* at 106, 97 S.Ct. at 292.

The appellant was allowed to walk out of doors twice, but his request was denied on other occasions apparently because the officials Hopkins accuses of not protecting him earlier were concerned about his personal safety. Hopkins' allegations fall far short of the Supreme Court's standard.

At Hopkins' request, the state subpoenaed a number of witnesses to appear at the hearing. Several were not present for various reasons. The appellant agreed to proceed without them when it was discussed with the Magistrate on the morning of the hearing. At the close of the testimony, in discussing the missing witnesses, Hopkins' counsel told the court that one witness was an eyewitness to the attack on Hopkins, and that another helped to transport him to the hospital. He concluded that "other than that I don't think that ... it would make any difference." The Magistrate ruled that the testimony of persons not present would only be cumulative and refused to delay the hearing until they could be produced. The appellant now contends that it was reversible error to proceed without those witnesses as their testimony would have "unfolded facts from different viewpoints." However, he made no showing of how their testimony would be other than cumulative. Under Fed.R. Evid. 403 the trial judge has broad discretion to exclude evidence in order to prevent the needless presentation of cumulative evidence. *United States v. Tidwell*, 559 F.2d 262, 267 (5th Cir.1977). The determination of the trial judge will not be disturbed on appeal absent a clear showing of an abuse of discretion. *United States v. Russell*, 703 F.2d 1243, 1249 (11th Cir.1983). Because there is no reason to believe that the missing witnesses would provide additional information, we hold the Magistrate did not abuse his discretion by proceeding without them.

For the above reasons, the order of the district court is

AFFIRMED.