Arlington Leon **BROWN,** # 036932, Plaintiff–Appellant,

v.

Sgt. Chris **HUGHES,** Chief Deputy Charles Tompkins, etc., et al., Defendants–Appellees.

No. 89–3166
Non–Argument Calendar.

United States Court of Appeals, Eleventh Circuit.

March 1, 1990.

Gayle Smith Swedmark, Tallahassee, Fla., for defendants appellees.

Before HATCHETT and EDMONDSON, Circuit Judges.[*]

PER CURIAM:

Arlington Leon Brown, an inmate of Florida's state prison system, filed this civil rights action under 42 U.S.C. § 1983 alleging that his constitutional rights were violated when the defendants failed to protect him from being attacked by another inmate, deliberately denied him medical care, and threw out some of his personal effects. The complaint named five state employees as defendants: correctional officers Chris Hughes and Charles Tompkins, sheriff Charlie Rhoden, and nurses Sue Cundiff and Cheryl Daniels. Following discovery and a pre-trial conference, both sides moved for summary judgment. The district court denied Brown's motion for summary judgment and granted summary judgment for all defendants. Brown now appeals.

---

[*] Judge Robert S. Vance was a member of the panel to which this case was submitted for disposition without oral argument pursuant to 11th Cir.R. 34–3, but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

## I. Background

 In considering a motion for summary judgment, the district court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, in the light most favorable to the party opposing the motion. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court must not resolve factual disputes by weighing conflicting evidence. *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir.1986). An order granting summary judgment is not discretionary and will be upheld only if everything in the record indicates that there is no genuine dispute over the material facts, and that the moving party is entitled to judgment as a matter of law. *Tippens*, 805 F.2d at 952 (citing *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir.1980)). Accordingly, the following account of events is based primarily on Brown's offers of proof in his sworn affidavits.[1]

On May 31, 1987, Arlington Brown was an inmate of the Hamilton County Jail in Jasper, Florida. That morning he went to speak to Sergeant Chris Hughes about a "racial problem" in his cell. As he spoke to Hughes the officer appeared to ignore him. Brown was then told that he would have to see the Captain if he wanted a cell change.[2] Hughes sat down at the booking desk and began working on the computer there, and Brown returned to his cell.

Shortly after 10:30 a.m. Brown was attacked from behind by another inmate, and a fight ensued. During the scuffle Brown suffered two broken bones in his left foot and a cut under his right eye. When Sergeant Hughes arrived he told Brown to pack up his belongings so that he could be moved to an isolation cell. The inmate with whom Brown had fought was not placed in isolation until later that evening, after Hughes had gone off duty.

As Brown was walking to the isolation cell, his foot began to hurt and swell. Once in the cell, Brown hopped up to the bars and told Sergeant Hughes that his foot felt as though it was broken; Hughes promised to send someone to look at it.[3] When nobody came, Brown asked a trusty to get Hughes. It was not until after 3:00 p.m., however, when Sergeant Hughes' shift had ended, that Brown was able to get the attention of another correctional officer and repeat his request for medical care.

Despite a written jail policy that there should be a licensed nurse on duty at all times, there was no nurse at the jail that day. Instead, Brown was taken to Hamilton County Memorial Hospital. By the time a doctor saw Brown (sometime after 4:30 p.m.), roughly six hours had elapsed since the fight, and Brown's foot had become so swollen that the medical staff could not put a cast on it. Brown had to wait eleven days before the inflammation abated to the point that he could be fitted with a cast.

Finally, Brown claims that on August 14 Sergeant Hughes came into his cell, yelled at him, and threw out some of his property that had been lying on the floor. According to Brown, Hughes did not say anything to the other inmates in the cell who also had some of their belongings on the floor. Brown was the only black inmate in the cell.

---

1. Brown, acting without the assistance of counsel, has submitted two affidavits concerning the summary judgment motions in this case: one in support of his own motion for summary judgment, and another in response to defendants' motion. While the affidavit in support of Brown's own motion contains 29 exhibits and is extensive, the other contains only three pages of argument and is cursory. Both affidavits were before the district court, however, when it simultaneously ruled on the two motions. Consequently, we have consolidated Brown's affidavits for the purpose of deciding this appeal.

2. Sergeant Hughes states in his affidavit that he was busy processing other inmates and securing them in cellblocks when he was approached by Brown. Hughes claims that he told Brown that he would talk to him later about the problem in Brown's cell.

3. According to Hughes' affidavit, Brown did not say that he had any medical problem, and there did not appear to be anything physically wrong with him.

Eleven days later, Brown initiated this action by filing a civil rights complaint form. Sixteen months of motions and discovery followed, after which the parties moved for summary judgment. The district court granted summary judgment for the defendants on three grounds. First, the district court held that Brown's statement to Sergeant Hughes that there was a problem in his cell was insufficient as a matter of law to require immediate protective action on the part of Hughes, because there was no reason to believe that Brown was in imminent danger. Second, the court found that any delay in providing medical assistance to Brown did not rise to the level of a constitutional tort, since Brown was transported to the hospital within hours of sustaining his injury. Finally, the court concluded from the record that the defendants were not deliberately indifferent to Brown's medical needs, since they provided treatment on the day of the injury and thereafter. The district court did not address Brown's claim that his property had been destroyed.

## II. Protection

■ We agree with the district court that the defendants cannot be held liable under § 1983 for failing to protect Brown. When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection. *Hopkins v. Britton*, 742 F.2d 1308, 1310 (11th Cir. 1984); *Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. Unit B Aug. 1981). Merely negligent failure to protect an inmate from attack does not justify liability under section 1983, however. *Davidson v. Cannon*, 474 U.S. 344, 347–48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986). Prison officials must have been deliberately indifferent to a known danger before we can say that their failure to intervene offended "evolving standards of decency," thereby rising to the level of a constitutional tort. *Estelle v. Gamble*, 429 U.S. 97, 105–06, 97 S.Ct. 285, 291–92, 50 L.Ed.2d 251 (1976); *Hopkins*, 742 F.2d at 1310. The known risk of injury must be " 'a strong likelihood, rather than

a mere possibility' " before a guard's failure to act can constitute deliberate indifference. *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir.1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir.1983)); *see Meriwether v. Faulkner*, 821 F.2d 408, 417 (7th Cir.1987); *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir.1988).

■ Here, Brown has failed to offer sufficient evidence that any defendant was aware or should have been aware of a strong likelihood that Brown would be assaulted. The only warning of trouble was Brown's statement to Sergeant Hughes that there was a "racial problem" in his cell. Brown did not say that he had been threatened, or that a fight was imminent, or that he feared an attack, nor is there evidence that racial tensions in the jail frequently resulted in violence. After Sergeant Hughes indicated that he was not going to do anything about the problem right away, Brown apparently returned to his cell voluntarily. In retrospect and with all the benefit of hindsight, we know today that a prompt response by Hughes to Brown's request for a transfer would have prevented Brown's injuries. Nevertheless, we cannot say that Sergeant Hughes' refusal to act under the circumstances constituted deliberate indifference to Brown's safety and rendered his confinement cruel or unusual.

## III. Medical Assistance

The district court erred, however, when it held that any delay in giving medical treatment to Brown was not prolonged enough to violate the Constitution, and when it concluded from the record that the defendants were not deliberately indifferent to Brown's need for medical attention.

### A. Constitutionally Cognizable Injury

■ Deliberate indifference to a prisoner's serious medical needs violates the eighth amendment because denying or delaying medical treatment is tantamount to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. at 104,

97 S.Ct. at 291; *Washington v. Dugger*, 860 F.2d 1018, 1021 (11th Cir.1988). In their motion for summary judgment, defendants do not dispute that a broken foot can be a serious and painful injury.[4] With this type of injury, it may be that deliberately indifferent delay, no matter how brief, would render defendants liable as if they had inflicted the pain themselves. Deliberately inflicted pain, as with an electric cattle prod, does not become unimportant and unactionable under the eighth amendment simply because the pain produced is only momentary. Even if we were to recognize as de minimus delays of a few seconds or minutes, a deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim. *See Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir.1985) (two and a half hour delay in treatment for a bleeding cut under the eye held actionable); *Hughes v. Noble*, 295 F.2d 495 (5th Cir.1961) (thirteen hour delay for broken and dislocated cervical vertebrae).

## B. Deliberate Indifference

██ In order for Brown to avoid summary judgment against him, he must offer some evidence that prison officials were deliberately indifferent to his injuries. A prison guard's intentional denial or delay of medical care is evidence of deliberate indifference. *Estelle v. Gamble*, 429 U.S. at 104, 97 S.Ct. at 291. When prison guards ignore without explanation a prisoner's serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference. *Thomas v. Town of Davie*, 847 F.2d 771, 772–73 (11th Cir. 1988); *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 704 (11th Cir.1985); *see H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1087 (11th Cir.1986).

██ The trial court found that the defendants were not deliberately indifferent to Brown's broken foot because Brown received medical care the same day as the injury. This overlooks the fact that none of the defendants were involved in sending Brown to the hospital; that was done by officers who are not named in this action. Even if the defendants had eventually arranged for medical care, delay of less than a day would not by itself preclude a finding of deliberate indifference as a matter of law. To the contrary, an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference. *See Estelle v. Gamble*, 429 U.S. at 104 & n. 11, 97 S.Ct. at 291 & n. 11 (citing *Hughes*, 295 F.2d at 495 (thirteen hours) and *Fitzke v. Shappell*, 468 F.2d 1072 (6th Cir.1972) (twelve hours)); *Aldridge*, 753 F.2d at 972–73 (two and a half hours).

██ Here, Brown has submitted affidavits stating that Hughes was called to his cell because there had been fight, that while Hughes was present Brown began to limp and then hop on one leg, that his foot

---

**4.** In *Estelle*, the Supreme Court suggested a range of medical needs that would be serious enough to require medical attention as a matter of constitutional right.

> In the worst cases, [failure to treat an inmate's medical needs] may actually produce physical torture or a lingering death, the evils of most immediate concern to the drafters of the Amendment. In less serious cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency....

429 U.S. at 103, 97 S.Ct. at 290 (citations and quotation omitted). This court has held on occasion that a prisoner's medical needs were not sufficiently serious that failure to provide medical care amounted to cruel or unusual punishment. *See, e.g., Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir.1986) ("pseudofollicu-litis barbae," i.e. "shaving bumps," is not a serious medical need); *Dickson v. Colman*, 569 F.2d 1310, 1311 (5th Cir.1978) (no serious medical need was demonstrated where the plaintiff's high blood pressure presented "no true danger" or "serious threat" to his health, and where plaintiff had full range of motion in his shoulder despite continuing pain from a five-year-old injury). Evidence of recent traumatic injury, however, has generally been sufficient to demonstrate a serious medical need. *See, e.g., Barfield v. Brierton*, 883 F.2d 923, 938 (11th Cir. 1989) (beating and sexual assault); *Thomas v. Town of Davie*, 847 F.2d 771 (11th Cir.1988) (automobile accident); *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1086, 1086–87 (11th Cir. 1986) (soft-tissue shoulder injury); *Aldridge v. Montgomery*, 753 F.2d 970, 972–73 (11th Cir. 1985) (one and a half inch bleeding cut under the eye).

began to swell severely, that he told Sergeant Hughes his foot felt as though it were broken, and that Hughes promised to send someone to look at it but never did. Brown claims that he asked a trusty to get Hughes, but it was only after Hughes went off duty that he was able to summon help. Sergeant Hughes' affidavit presents an entirely different picture. According to Hughes, Brown said nothing about his foot, and there did not appear to be anything wrong with him. Obviously, then, there is a genuine issue of material fact as to whether Sergeant Hughes knew of Brown's condition during the hours in which no medical care was provided. Consequently, neither Hughes nor Brown is entitled to summary judgment.

Brown has failed to offer any evidence, however, that defendants Rhoden, Tompkins, Cundiff or Daniels were aware of his injury on the day it occurred. Although no nurses were present at the jail that day, the procedure of sending Brown to the hospital, once employed, was sufficient to ensure that Brown's foot was treated promptly. Thus, Brown has failed to raise an issue of deliberate indifference on the part of these defendants, and the order of summary judgment in their favor must be affirmed.

### IV. Destruction of Property

Finally, Brown has submitted two affidavits stating that Hughes singled him out for unequal treatment by throwing out some of his belongings that were left on the floor, while ignoring those owned by his white cellmates. Appellants point out that this issue is not raised in Brown's amended complaint. They urge us to ignore these allegations, as the district court did.

On his original civil rights complaint form, Brown alleged that Hughes had thrown out his property. When the district court ordered Brown to submit an amended complaint form, however, Brown apparently forgot to re-allege this claim. Brown's subsequent filings, such as his pre-trial narrative statement and his motion for summary judgment, clearly demonstrate that Brown never intended to relinquish this claim against Hughes. The district

court should have construed Brown's repeated assertions that his property had been destroyed as a motion to amend his complaint filed out of time, and, in the interest of justice, should have allowed amendment under Rule 15(a) of the Federal Rules of Civil Procedure. *See Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972).

Brown has moved for summary judgment on this issue and Hughes has failed to respond in his affidavit. However, since Brown's original complaint was never served on Hughes, and since his complaint was never formally amended to include this cause of action, Hughes should be given another opportunity to respond to Brown's motion for summary judgment.

### V. Summary

The district court's order granting defendants' motion for summary judgment is REVERSED with regard to the claims of denial of medical assistance and destruction of property against defendant Hughes but is otherwise AFFIRMED. The district court's order denying plaintiff's motion for summary judgment is VACATED with regard to the claim of destruction of property but is otherwise AFFIRMED.

AFFIRMED in part; REVERSED in part; VACATED in part; and REMANDED.