[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 15, 2007
THOMAS K. KAHN
CLERK

_____

No. 05-17162

_____

D. C. Docket No. 03-20442 CV-PAS

JULIO CESAR ANDUJAR,

                                                            Plaintiff-Appellee,

versus

JORGE RODRIGUEZ, et al.,

                                                            Defendants,

HARRY NEWCOMB,
ROBERT A. BAREA,

                                                            Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 15, 2007)

**ON PETITION FOR REHEARING**

Before TJOFLAT, HULL and BOWMAN,[*] Circuit Judges.

BOWMAN, Circuit Judge:

Appellee's Petition for Panel Rehearing is GRANTED in part and DENIED in part. While almost all of the previous opinion remains the same, this court has revised footnote 4 of the previous opinion to address a matter raised in Appellee's Petition for Panel Rehearing. Thus, the court VACATES and WITHDRAWS the previous opinion dated March 16, 2007, and substitutes the following opinion. In this revised opinion, the former footnote 4 now appears as footnote 5.

## REVISED OPINION

This is an interlocutory appeal by Harry Newcomb and Robert Barea, paramedics for the City of Miami, Florida, from the denial of summary judgment based on qualified immunity. Julio Cesar Andujar sued Newcomb and Barea under 42 U.S.C. § 1983, alleging that Newcomb and Barea violated his constitutional rights by acting with deliberate indifference to his serious medical needs. We reverse the denial of summary judgment.

### I.

On the morning of May 2, 1999, Andujar and accomplices hijacked a freight

---

[*]Honorable Pasco M. Bowman II, United States Circuit Judge for the Eighth Circuit, sitting by designation.

truck at gunpoint.[1]  As police pursued the truck, Andujar jumped from the truck and fled on foot into a residential neighborhood.  Police officers canvassed the neighborhood, and a police dog located Andujar hiding in the yard of a home.  The dog bit Andujar on his right upper thigh and dragged him from the yard to the street.  Andujar's thigh began to bleed, and a police officer called for medical assistance.  Newcomb and Barea responded to the request for medical assistance.

Newcomb and Barea determined that Andujar had multiple puncture wounds on his thigh but that his vital signs were good.  They cleaned the wounds and wrapped Andujar's thigh in a sterile bandage.  After the bandage was applied, Andujar's wounds stopped bleeding, but he continued to feel pain.  Newcomb and Barea released Andujar to police custody for post-arrest processing.

While being transported to the police station, Andujar was tortured by a police officer who repeatedly plunged a police baton into the bandaged wounds.  The wounds began bleeding again.  Upon arrival at the station, Andujar was taken to an interrogation room and left alone.  Blood from his wounds began puddling on the floor, and he called for help.  When police officers returned to the room and saw the blood, they arranged for Andujar to be transported to a hospital.  Andujar's wounds were stitched at the hospital approximately two hours after he was bitten.

---

[1]In this review of the denial of summary judgment, we set forth the facts in the light most favorable to Andujar, the nonmoving party.  See Hope v. Pelzer, 536 U.S. 730, 733 n.1 (2002).

Andujar brought suit under 42 U.S.C. § 1983 against Newcomb, Barea, and several police officers.  Andujar's claim against Newcomb and Barea asserts that they acted with deliberate indifference to his serious medical needs when they released him to police custody instead of transporting him to a hospital for further medical treatment.  Newcomb and Barea moved for summary judgment based on qualified immunity.  The district court denied the motion, and this appeal followed.

## II.

"Although the denial of summary judgment generally is not a final appealable order subject to immediate appeal, an interlocutory appeal may be taken where the district court denies the defense of qualified immunity and the appeal involves a question of law."  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006), petition for cert. filed, 75 U.S.L.W. 3355 (U.S. Dec. 27, 2006) (No. 06-895).  We review de novo a district court's denial of a motion for summary judgment on qualified immunity grounds, viewing the facts in the light most favorable to the plaintiff.  See Bozeman v. Orum, 422 F.3d 1265, 1267 (11th Cir. 2005) (per curiam).

## III.

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates

4

'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))), cert. denied, 541 U.S. 935 (2004); see also Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (ruling that qualified immunity "protect[s] from suit 'all but the plainly incompetent or one who is knowingly violating the federal law'" (quoting Willingham v. Loughnan, 261 F.3d 1178, 1187 (11th Cir. 2001))). When a government official seeks summary judgment based on qualified immunity, courts apply a two-step test to determine whether qualified immunity is appropriate. First, "[a] court required to rule upon the qualified immunity issue must consider . . . this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 201 (2001). When a court answers this question affirmatively, the court moves to the second step, which is to consider whether the constitutional right was "clearly established" on the date of the violation. Id.[2]

We first turn to the question "whether [Andujar's] allegations, if true,

---

[2]When it is undisputed, as it is here, that government officials were acting within their discretionary authority, the burden is on the plaintiff to establish that qualified immunity is not appropriate. Dalrymple, 334 F.3d at 995.

establish a constitutional violation." Hope, 536 U.S. at 736. Andujar asserts that Newcomb and Barea violated the Fourteenth Amendment by acting with deliberate indifference to his serious medical condition. See Crosby v. Monroe County, 394 F.3d 1328, 1335 (11th Cir. 2004). While Andujar admits that Newcomb and Barea cleaned and bandaged his dog-bite wounds and that the wounds stopped bleeding, Andujar contends that the paramedics acted with deliberate indifference when they did not immediately transport him to a hospital for further treatment. According to Andujar, there is a genuine issue as to whether Newcomb and Barea "intentionally delayed providing necessary medical treatment to Andujar," Br. of Andujar at 27, when they "released Andujar to the custody of the Miami-Dade Police Department, leaving it to the police to determine when he should receive further medical treatment," id. at 26.

To prevail on his Fourteenth Amendment[3] claim, Andujar "'must satisfy both an objective and a subjective inquiry. First, [he] must prove an objectively serious medical need. Second, [he] must prove that the [government] official acted with

_____

[3]Claims of deliberate indifference to the serious medical needs of pretrial detainees are governed by the Fourteenth Amendment's Due Process Clause rather than by the Eighth Amendment's Cruel and Unusual Punishment Clause, which governs similar claims by convicted prisoners. Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 n.6 (11th Cir. 1997). Because "[w]e have held that the minimum standard for providing medical care to a pre-trial detainee under the Fourteenth Amendment is the same as the minimum standard required by the Eighth Amendment for a convicted prisoner," we analyze Andujar's claim under the decisional law of both amendments. Id.

6

deliberate indifference to that need.'" Bozeman, 422 F.3d at 1272 (quoting Brown

v. Johnson, 387 F.3d 1344, 1351 (11th Cir. 2004)).  We have defined an

objectively serious medical need as "'one that is so obvious that even a lay person

would easily recognize the necessity for a doctor's attention.'"  Farrow v. West, 320

F.3d 1235, 1243 (11th Cir. 2003) (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40

F.3d 1176, 1187 (11th Cir. 1994)).  Viewing the facts in the light most favorable to

Andujar, Andujar's dog-bite wounds could be deemed objectively serious.  Andujar

presented evidence that the wounds covered both the front and back of his thigh,

that the wounds were more than superficial, that he was crying in pain, and that his

ability to walk was impaired.[4]

Andujar cannot establish, however, that Newcomb and Barea acted with

deliberate indifference to his medical needs.  To satisfy this subjective part of the

Fourteenth Amendment inquiry, Andujar is required to prove three things: (1) that

Newcomb and Barea knew of a risk of serious harm; (2) that Newcomb and Barea

disregarded that risk; and (3) that the conduct of Newcomb and Barea amounted to

more than gross negligence.  Bozeman, 422 F.3d at 1272.  Andujar's claim fails on

the third element, if not the first two.[5]  There is no question that Andujar received

---

[4]At oral argument, counsel for Newcomb and Barea conceded that Andujar's injuries were serious.

[5]Andujar argues that a City of Miami Rescue Policy required Newcomb and Barea to transport him to a treatment facility.  "But this observation, even if true, misses the point . . . .

7

prompt medical treatment for the dog-bite wounds. Newcomb and Barea responded to the scene of the arrest and cleaned and dressed the wounds. Newcomb and Barea ensured that the wounds stopped bleeding, that Andujar's condition was stable, and that Andujar's vital signs were good. Only then did they release Andujar to the custody of the police for processing of the serious charges against him. Newcomb and Barea assumed that the police would transport Andujar to a medical facility for further treatment after processing. Andujar's medical needs at the time Newcomb and Barea released him to the police were not urgent,[6] and to the extent that Newcomb and Barea's conduct delayed Andujar's receipt of stitches by two hours or less, the short delay was tolerable to give the police an opportunity to book Andujar. See Harris v. Coweta County, 21 F.3d 388, 393–94 (11th Cir. 1994) ("The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."). Newcomb and Barea's conduct, tested by the ordinary standards of negligence, did not amount to more than mere negligence. See Adams v. Poag, 61 F.3d 1537,

Failure to follow procedures does not, by itself, rise to the level of deliberate indifference because doing so is at most a form of negligence." Taylor v. Adams, 221 F.3d 1254, 1259 (11th Cir. 2000), cert. denied, 531 U.S. 1077 (2001). As we discuss below, Andujar has not established that any of the actions of Newcomb and Barea amounted to more than gross negligence.

[6]According to Andujar, his wounds only started bleeding again after a police officer repeatedly poked them with a police baton on the way to the police station.

8

1543 (11th Cir. 1995) ("'[I]t is obduracy and wantonness, not inadvertence or error in good faith,' that violates the Eighth Amendment in 'supplying medical needs.'" (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986))).[7]

Alternately, even if we were to find Newcomb and Barea's conduct constitutionally impermissible, we would nonetheless conclude that Newcomb and Barea are shielded from civil liability under the second step of the qualified immunity analysis because "their actions did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope, 536 U.S. at 739 (quoting Harlow, 457 U.S. at 818). The state of the law at the time of Andujar's arrest in May 1999 did not give Newcomb and Barea "fair warning that their alleged treatment of [Andujar] was unconstitutional." Id. at 741; see also Saucier, 533 U.S. at 202 ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.").

Andujar has not cited, and we have not found, a case holding that the Constitution requires a paramedic who has treated a detainee's immediate medical

---

[7]Newcomb and Barea's initial brief states that "a plaintiff who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." Initial Br. of Appellants Newcomb & Barea at 21. Andujar asserts that we should not consider this argument because Newcomb and Barea did not raise it in the district court. We need not decide this matter because in concluding that Andujar failed to establish a constitutional violation, we did not consider the allegedly new argument.

9

needs to transport the detainee to a medical facility for non-urgent treatment rather than release the detainee to police officers for booking, relying on the police officers to later transport the detainee for further treatment. Thus, there was no factually similar caselaw that would have put Newcomb and Barea on notice that their conduct violated the Constitution. Moreover, while there was caselaw establishing the general legal proposition that a government official who intentionally delays providing medical care to an inmate, knowing that the inmate has a serious medical condition that could be exacerbated by delay, acts with deliberate indifference, see, e.g., Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425 (11th Cir. 1997); Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir.) (per curiam), cert. denied, 496 U.S. 928 (1990), we cannot say that this general rule applied "with obvious clarity to the specific conduct in question." United States v. Lanier, 520 U.S. 259, 271 (1997); see also Bozeman, 422 F.3d at 1274 (noting that because "cases are highly fact-specific," this general legal proposition "ordinarily does not preclude qualified immunity in cases involving a delay in medical treatment for a serious injury"); Evans v. Stephens, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc) (ruling that a law is clearly established only if it "dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that what Defendant was doing violated Plaintiffs' federal rights in the

10

circumstances" (internal quotation marks and citation omitted)).  Andujar's case does not meet this test, and thus Newcomb and Barea would be entitled to qualified immunity on this ground even if their conduct were found constitutionally impermissible.

## IV.

The district court's decision denying summary judgment to Newcomb and Barea is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**.