COX, Circuit Judge,
concurring in part and dissenting in part:
I do not join the court’s opinion because I disagree with its statement of the facts. I concur in the court’s holding that Detective. Carl Rousseau, Sergeant Yasmina Smith, and Sergeant Braulio Gonzalez are entitled to qualified immunity on Roberto 'Valderrama’s 42 U.S.C. § 1983 false arrest claim. I concur in the court’s holding that Rousseau, Smith, and Gonzalez are entitled to state-law immunity on Valderrama’s false arrest claim under Florida law. I concur in the court’s holding that Gonzalez is entitled to qualified immunity on Valderrama’s Section 1983 deliberate indifference claim against him.
I dissent from the court’s holding that Rousseau and Smith are not entitled to qualified immunity on Valderrama’s Section 1983 deliberate indifference claim against them. I dissent because the court’s holding on this claim is based on speculation that the record does not support.
I. The Undisputed Facts Derived from Record Evidence
The court ignores undisputed facts that rend its speculative weave. One is the transcript of transmissions between Smith and the dispatcher. Rousseau shot Valderrama at 6:30:42. (Op. at 1110-11). Here is the entire transcript of the conversation between Smith and the dispatcher:
• 06:34:18 — Smith calls police dispatch on the headquarters line. She says, “Can I have a rescue at NW 12th *1124 Street and NW 2nd Avenue reference, ahh, a laceration.”
• 06:34:23 — the dispatcher answers, “NW 2 Avenue ... What the street?”
• 06:34:28-Smith answers, “12 Street and 2 Avenue.”
• 06:34:33-the dispatcher says, “Okay so NW 12 Street on 2 Avenue. Do you want a routine ?”
• 06:34:39-Smith responds, “No, on the three.”[1]
• 06:45:00 (ten minutes, eleven seconds after her last communication with dispatch ended)-Smith radios back and says, “Can you tell me ETA please. Subject is bleeding.” The dispatcher answered 2 seconds later: “Yes, well they didn’t answer on the police emergency at the desk. I had to call them on the phone. I’ll see if I can get an ETA.”
(DE93-19:2) (emphasis added). Fifty-three seconds after the dispatcher gave this answer (fifteen minutes, thirteen seconds after the shooting), Miami Fire-Rescue arrived. Also undisputed is that five of the fifteen minutes that passed between Smith’s first call to dispatch and Miami Fire-Rescue’s arrival was due to the dispatcher’s inability to hail Miami Fire-Rescue. See DE93-15:1 (Miami Fire-Rescue Patient Care Report-unit dispatched at 6:39).
None of these undisputed facts support the court’s speculation that Rousseau and Smith took the three minute and thirty-three second “delay” between the gunshot and the call to “concoct” a way for Rousseau to cover up his conduct. The following section highlights the court’s unwarranted inferences.
II. The Court’s Holding and Its Basis
The court’s holding is that “a reasonable jury could find that Sergeant Smith and Detective Rousseau were deliberately indifferent to Mr. Valderrama’s serious medical need....” (Op. at 1115-16). The court supports this conclusion with several inferences that are unreasonable because they are not supported by facts in the record. These include that Rousseau and Smith “spoke about the shooting before calling for assistance and ... discussed the need to concoct a story that would justify Detective Rousseau’s use of deadly force” and that Smith “delayed reporting and misreported Mr. Valderrama’s injuries in order to delay the arrival of emergency personnel on the scene.” (Op. at 1118). See also id. at 1118 (“[T]he officers’ subsequent actions, including ... Sergeant Smith reporting Mr. Valderrama’s injuries as a laceration ... support an inference that their conversation concerned the need to concoct a story that would justify Detective Rousseau’s use of deadly force.”); id. at 1119 (“Based on this record, a jury could find that Detective Rousseau and Sergeant Smith discussed Mr. Valderrama’s injuries before calling for medical care ... [and] that during this conversation, the officers implicitly or explicitly agreed to delay the arrival of medical care.”)
The. dispatch transcript offers no basis upon which to pin any wrongdoing upon Smith except that she first reported the injury as a “laceration” rather than as a “gunshot wound.” But, the fact that she asked for an “on the three” response, rather than a “routine” response, cuts against any inference that her “laceration” report was part of an effort to delay the arrival of medical personnel. Also, and as previously noted, the first five minutes of the delay cannot be attributed to Smith. When she called the dispatcher back, she learned *1125 that the dispatcher had been unable to reach Miami Fire-Rescue.
Valderramma’s Fourth Amended Complaint devotes forty-four paragraphs to the alleged effort of the police to cover for Rousseau. Not one word in those paragraphs suggests that a conversation between Rousseau and Smith of the kind described in the court’s opinion even occurred. Neither Valderrama’s summary judgment papers, the district court’s summary judgment opinion, nor Valderrama’s brief to this court paints that picture.[2] All that can be derived from record evidence is that Rousseau told Smith he had shot Valderrama and that Valderrama saw them talking. Any inference as to what Rousseau and Smith said to one another during that “discussion” has been supplied entirely by the court’s opinion in its effort to dress a deliberate indifference claim from fabric that the record does not provide.
III. Brown v. Hughes
The court relies heavily on Brown v. Hughes, 894 F.2d 1533 (11th Cir.1990), for the proposition that any delay in providing medical care for serious medical needs is unconstitutional. That case involved an inmate who suffered a broken foot in a jail-cell fight. Jailers waited six hours to take him to the hospital, by which time his foot was so swollen that doctors had to wait eleven days to put a cast on it. Brown cites several of our older cases for the proposition that “[wjhen prison guards ignore without explanation a prisoner’s serious medical condition that is known or obvious to them, the trier of fact may infer deliberate indifference.” 894 F.2d at 1538 (citations omitted).
Neither the statement that “[any] delay, no matter how brief,” id., nor-the statement quoted at the end of the preceding paragraph, was necessary to a holding regarding a six-hour delay in tending to a broken foot that resulted in swelling of such magnitude that eleven days had to pass before a cast¿could be put on. Brown is clearly distinguishable on its facts. First, the delay in Brown was six hours; the delay here was fifteen minutes. Second, the medical condition of the inmate in Brown worsened because of the delay. When Miami Fire-Rescue arrived fifteen minutes after Rousseau shot Valderrama, Valderrama was alert, conscious, responsive, had stable vital signs, and had a “hemorrhage-not dangerous” with “no signs of distress.” (DE93-15 [Miami Fire-Rescue Patient Care Report]).
IV. Conclusion
The court’s opinion that Rousseau and Smith intentionally delayed medical care for Valderrama so Rousseau could fabricate his own story is of the court’s own making. I dissent. I would reverse the district court’s denial of qualified immunity in favor of Rousseau and Smith because the record does not support the conclusion that Rousseau and Smith were deliberately indifferent to Valderrama’s serious medical needs.

. From beginning to end, this exchange took 21 seconds.

. I note that the duration of the cover-up . alleged in Valderrama’s Fourth Amended Complaint, his summary judgment papers, and his brief to this court is much longer than three minutes, thirty-three seconds. The court, however, focuses only on that brief window about which the record reveals nothing of any substance.