[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  19-11230
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cv-00025-DHB-BKE


ARTHUR LAWTON CLARK,

                                                              Plaintiff-Appellant,

versus


LYNN SHEFFIELD, Sheriff, LT. TOMMY
BARRENTINE, DR. PETER WROBEL,

                                                              Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(March 17, 2020)


Before WILSON, TJOFLAT, and ANDERSON, Circuit Judges.

PER CURIAM:

Arthur Clark,[1] who was formerly a prisoner at Dodge County Jail, appeals the District Court's order granting summary judgment to Sheriff Lynn Sheffield, Lt. Tommy Barrentine, and Dr. Peter Wrobel on his 42 U.S.C. § 1983 action. Clark brought this action alleging deliberate indifference to serious medical needs, in violation of the Eight Amendment. Clark argues that the District Court erred in holding that the delayed treatment of his knee injury did not amount to deliberate indifference and that Sheffield and Barrentine could not be held liable under a theory of respondeat superior. Clark also argues that the District Court erred by failing to consider evidence submitted after the magistrate's report and recommendation. We affirm.

## I.

On May 12, 2015, Clark fell and injured his right knee in an altercation. Dodge County deputies then arrested him for his suspected involvement in a shooting. After complaining of a knee injury at the scene, Clark was immediately taken to the Dodge County Hospital. The emergency physician at the hospital

---

[1] Clark proceeded *pro se* before the District Court and during the submission of initial briefs before this Court. His appeal was dismissed for want of prosecution after he failed to timely file his appellant's brief. He then retained counsel, who submitted a second appellant brief on Clark's behalf. That appeal was also dismissed for want of prosecution as the appendix was filed out of time and without leave of the court. We granted a second motion to reinstate the appeal. Clark's attorney asks that, due to the short timeframe of his representation and his inability to access certain electronically filed documents, we review the contents of the counseled brief as well as Clark's *pro se* brief. In accordance with this Court's local rules, we decline to consider Clark's *pro se* appellant brief as he is represented by counsel. *See* 11th Cir. R. 28-4 ("When a party is represented by counsel, the clerk may not accept a brief from the party.").

ordered x-rays of Clark's right knee, which revealed no significant fracture, but questionable irregularity at medial tibial plateau.  Clark's knee was wrapped in an ACE bandage and he was given a knee immobilizer.  Clark was discharged later that day to the custody of Dodge County deputies.

There are two versions of the hospital's discharge form in Clark's chart. Both copies indicated that he should apply ice, wrap his knee, and take Tylenol/Advil three times per day as needed for pain.  Both advised Clark to follow up with the doctor at the Dodge County Jail if he had persistent symptoms. One copy, which indicated signatures made on May 13, included a follow-up care section that listed various providers as well as a "No Follow-Up Care needed" box—nothing in the section was marked.  The other copy, signed by the emergency physician and Deputy K. Whito, included a check mark next to one provider's name, Dr. Rosenbaum.  That copy also instructed Clark to "use knee immobilizer until follow cleared by orthopedic."

Clark alleges that during this hospital visit, the emergency physician informed him that he "needed to see Dr. Rosenbaum, a local orthopedist, a.s.a.p." He also alleges that two deputies, C. Screws and Donald, were present and heard this comment.

Upon his arrival at the Dodge County Jail, Clark signed a consent form for treatment by Southern Correctional Medicine ("SCM").  He was seen the next day,

3

May 13, by SCM nurse practitioner Deborah Stewart for complaints of a possible tibia fracture. Stewart recommended that Clark avoid putting pressure on his right leg and scheduled him for a visit with Dr. Wrobel, an SCM doctor. She also ordered that his knee immobilizer stay in place and prescribed pain medication.

Three days later, on May 16, Clark submitted a grievance directed to Sheffield, Barrentine, and two deputies; he stated that he had serious injuries. He explained that he was in serious pain, his knee felt "crushed" and his ribs felt broken, he also said that there was swelling and discoloration in his right knee and leg. He requested "emergency medical treatment a.s.a.p."

Two days later, Stewart re-examined Clark. Her notes indicate that Clark's right leg was swollen and bruised; she ordered an x-ray. His current medications included aspirin and ibuprofen. The x-ray took place on May 20. According to the radiological consultation doctor, it showed a fractured medial aspect medial tibial plateau. Stewart reviewed the results on May 22 and scheduled Clark to see Dr. Wrobel on his next visit.

Dr. Wrobel is a licensed physician in the State of Georgia and is the owner and Director of SCM. He examined Clark on May 26. He concluded that Clark had a possible tibial fracture and referred Clark for an orthopedic consult with orthopedist Dr. Donald Rosenbaum.

4

Dr. Rosenbaum examined Clark and reviewed his x-ray results two days later. He recommended surgery "as soon as possible . . . to reconstruct [the] lateral tibial plateau fracture." He also ordered a preoperative CT scan. SCM scheduled the CT scan for the next day, May 29.

SCM cancelled that CT after being informed that Clark was to be transferred to a different facility. On June 3, SCM was informed that Clark was no longer going to be transferred to another facility and should reschedule the CT "ASAP." The CT was scheduled and took place on June 4.

Clark submitted another grievance on June 4, 2015. He stated that his knee was crushed and broken, swollen and discolored and that he was in serious pain. He requested emergency surgery as soon as possible.

Dr. Rosenbaum operated on Clark on June 9, 2015. Clark remained hospitalized until June 12, 2015. Clark alleges that, after the surgery, Dr. Rosenbaum told him that "the length of time between [the] injury and surgery had added to the deteriorated condition of [his] knee." Dr. Rosenbaum also allegedly said that Clark had "a 50% chance of eventually needing an artificial knee."

In his complaint, Clark alleges that he suffered from a severe headache on June 30. He was given only ibuprofen and Tylenol. He complained to Deputy Screws, who advised him to drink water. He alleges that he became disoriented and lost his ability to speak and that the deputies looked at him strangely. He

5

stated that when his attorney came to visit on July 9, the attorney recognized the symptoms as being those of a stroke.  Clark alleges that he was transferred to Jackson Diagnostic and Classification Prison after his attorney notified Sheffield of Clark's condition.

Clark alleges that upon his admission to Jackson, Dr. Fowlkes examined him, and he was subsequently seen by other medical professionals.  Dr. Fowlkes informed Clark that he had likely suffered a stroke prior to his transfer to Jackson. Dr. Fowlkes, as well as a different orthopedist, informed Clark that his knee had healed.

## II.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  We review a district court's grant of summary judgment de novo, viewing all evidence and drawing all reasonable inferences in the light most favorable to the non-moving party.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014).   We liberally construe Clark's pro se pleadings and credit "specific facts" pled in his sworn complaint when considering his opposition to summary judgment.  *Id.*

Clark's complaint asserted two claims.  First, he argued that the emergency physician at the hospital instructed him to see Dr. Rosenbaum, a local orthopedist,

as soon as possible and that Dr. Wrobel's and the prison officials' failure to provide him timely medical treatment led to prolonged pain and suffering, humiliation, and negatively affected his chances of fully recovering mobility in his knee.  Second, he claimed that he was not provided adequate medical treatment after his surgery and suffered a stroke.  The District Court granted summary judgment for the defendants on both claims.

While Clark references his stroke in his opening brief and explains why it constituted a serious medical need, he provides no further argument or discussion on why Dr. Wrobel, Sheffield, or Barrentine were deliberately indifferent to that condition.  Thus, Clark has abandoned that claim and we are precluded from considering the issue on appeal.  *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009)  ("[A]n appellant's brief must include an argument containing 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'  Thus, an appellant's simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes our considering the issue on appeal." (citations omitted)).  We consider only Clark's claim regarding his knee injury.

### III.

A prisoner's Eighth Amendment right to be free from the unnecessary and wanton infliction of pain is violated when a prison official is deliberately

7

indifferent to the prisoner's serious medical need. *See McElligott v. Foley*, 182 F.3d 1248, 1254 (11th Cir. 1999). To prevail on such a claim, the plaintiff must first demonstrate an objectively serious medical need. *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Then, the plaintiff must show that prison officials acted with deliberate indifference towards that need. *Id.* This requires proving (1) that the prison official had subjective knowledge of a risk of serious harm, (2) that the official disregarded that risk, and (3) that the official's conduct amounted to more than gross negligence. *Goebert v. Lee Cty.*, 510 F.3d 1312, 1326–27 (11th Cir. 2007). Violations of the Eight Amendment occur only when the course of treatment, or lack thereof, is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

## A.

As did the District Court, we conclude that Clark demonstrated a serious medical need for his knee injury. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow*, 320 F.3d at 1243. "[T]he medical need must be one that, if left unattended, poses a substantial risk of serious harm." *Id.*

8

None of the Appellees contest the seriousness of Clark's medical need. Clark's knee was admittedly fractured. The fracture was in fact diagnosed by multiple physicians and required surgery to repair. Furthermore, we have previously found that the pain caused by a similar injury, a broken foot, is a serious medical need. *See Brown v. Hughes*, 894 F.2d 1533, 1538 (11th Cir. 1990).

## B.

To demonstrate deliberate indifference, the plaintiff must show that each official had subjective knowledge of the risk of harm. *Goebert*, 510 F.3d at 1327. "Each individual Defendant must be judged separately and on the basis of what that person knows." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). Because the plaintiff must demonstrate that each official knew of the facts that would indicate a serious medical need, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Id.* Even if a plaintiff can show subjective knowledge, the plaintiff must then show that the official disregarded his medical needs by following a course of action which was more than merely negligent. *Goebert*, 510 F.3d at 1327. Clark fails to do so for any defendant.

### 1. Dr. Wrobel

We are hesitant to conclude that a doctor was deliberately indifferent when a prisoner receives medical care. *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir.

1989).  But for some emergency injuries, such as broken bones, even a few hours delay in receiving treatment can constitute deliberate indifference.  *Harris v. Coweta Cty.*, 21 F.3d 388, 393–94 (11th Cir. 1994).  "The tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay."  *Id.*

Clark argues that Dr. Wrobel's course of treatment was beyond grossly negligent because the emergency physician allegedly said Clark should see the specialist "a.s.a.p" and Dr. Wrobel's recommendation did not come until two weeks later.  But Clark sued only Dr. Wrobel, not Stewart, not SCM, and not Dr. Rosenbaum.  We look to what Dr. Wrobel knew, when he knew it, and how he responded.  *See Burnette*, 533 F.3d at 1331.

The record reflects that Dr. Wrobel first gained subjective knowledge of Clark's knee injury when he examined Clark on May 26, 2015.  Dr. Wrobel examined Clark and the x-rays, he confirmed the hospital diagnosis, and he immediately referred Clark to an orthopedic specialist.  The specialist, Dr. Rosenbaum, examined Clark two days later.

Clark contends that the emergency physician said he needed to see a specialist immediately, but his medical records and discharge paperwork do not

10

indicate that there was an immediate need to see a specialist.[2]  We have previously

held that a difference of opinion between a medical professional and a prisoner

concerning the proper diagnosis or course of treatment is usually insufficient to

support a claim of deliberate indifference.  *Harris v. Thigpen*, 941 F.2d 1495, 1505

(11th Cir. 1991).  In any event, Dr. Wrobel acted in the manner that Clark contends

was the appropriate course of action—he referred Clark to an orthopedic specialist

at the time of his examination, and instructed Clark to stop taking his blood

pressure medications and ibuprofen to prepare for the consultation.  Clark fails to

demonstrate how the two-day "delay" between Dr. Wrobel's examination and Dr.

Rosenbaum's examination was "so grossly incompetent, inadequate, or excessive

as to shock the conscience or to be intolerable to fundamental fairness."  *Id.*

Clark also argues that Dr. Wrobel's staff provided constitutionally deficit

medical care.  Supervisory officials, however, are not liable for the

unconstitutional acts of their subordinates "on the basis of respondeat superior or

vicarious liability."  *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999)

(quoting *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir.1994)).  To be

liable under a supervisory theory, the supervisor must personally participate in the

---

[2] The only other evidence regarding the applicable standard of care or appropriate course of treatment comes from Dr. Wrobel's affidavit, which stated that "Mr. Clark received standard of care at all times."

11

alleged constitutional violation or there must be a causal connection between the supervisory official's actions and the alleged deprivation. *Id.*

As explained above, Dr. Wrobel immediately referred Clark to Dr. Rosenbaum when he became aware that Clark had a possible knee fracture. Even if Dr. Wrobel had been subjectively aware of Clark's injury based on Clark's pre-booking hospital visit, Clark has failed to provide evidence that the course of treatment during that two-week period amounted to "more than gross negligence." *Goebert*, 510 at 1327. Stewart examined Clark's knee on May 13 and May 18, ordered and reviewed his x-rays, maintained his pain medications, and scheduled Clark to meet with Dr. Wrobel on the doctor's next visit to the Jail. This course of action is consistent with Clark's discharge instructions from the hospital. We have previously held that medical care need not be "perfect, the best obtainable, or even very good." *Thigpen*, 941 F.2d at 1510. Even though Clark maintains that more should have been done or more should have been done faster, he fails to demonstrate how that is anything other than a difference of opinion. *See id.*

We find that Clark's complaints regarding the speed at which he was referred to a specialist are insufficient to support his claim of deliberate indifference for his knee injury.

12

2.  Sherriff Sheffield and Lt. Barrentine

Sheriff Lynn Sheffield has served as the elected sheriff of Dodge County since 2013.  He delegates administration of the Dodge County Jail to the Jail Administrator and staff.  Lt. Tommy Barrentine was serving as the interim Jail Administrator during Clark's incarceration.  His primary responsibilities as Jail Administrator were to supervise detention officers and handle administrative matters.

Clark argues that Sheffield and Barrentine had a statutory duty to supply medical treatment and that both officials had specific notice of Clark's injuries.  Clark alleges that officers under Sheffield and Barrentine's line of command heard the emergency physician recommend that he should see a specialist as soon as possible.  He also says that his grievances are evidence of Sheffield's and Barrentine's knowledge regarding his serious medical need.

Taking as true Clark's allegations that deputies within Sheffield and Barrentine's line of command knew Clark needed to see a specialist as soon as possible, that knowledge cannot be imputed to Sheffield or Barrentine.  Both officials are only responsible for the facts they observed or heard, not for information allegedly provided to their subordinates.  *Burnette,* 533 F.3d at 1331.  Sheffield and Barrentine are not liable for the unconstitutional acts of other deputies "on the basis of respondeat superior or vicarious liability."  *Hartley*, 193

13

F.3d at 1269. Supervisory liability occurs only when the supervisor personally participates in the alleged violation or when there is a causal connection between the supervisory official's actions and the alleged deprivation. *Id.*

The only evidence that Sheffield and Barrentine had any specific knowledge, and thus personal participation, of the delay in treating Clark's knee injury are his two grievances. But neither Sheffield nor Barrentine are trained medical professionals, nor did they have any role in Clark's examinations or course of treatment. It is uncontested that Clark received care from the medical professionals that Sheffield and Barrentine oversaw—he was examined by both Stewart and Dr. Wrobel before being referred to see Dr. Rosenbaum for surgery. It was reasonable for Sheffield and Barrentine to rely on the medical judgments made by medical professionals responsible for prisoner care.

Clark also received timely treatment in response to his grievances. He was seen again by Stewart and given more pain medication two days after he filed his first grievance and received a pre-operative CT scan on the day he filed his second grievance. Moreover, as explained above, at most Clark's grievances evidence a difference of opinion regarding the speed at which he should receive surgery, which is insufficient to support a deliberate indifference claim. *Thigpen*, 941 F.2d at 1505.

A causal connection between the supervisor and the deprivation may be established (1) "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so", (2) "when a supervisor's custom or policy results in deliberate indifference to constitutional rights", or (3) "when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations and alterations omitted).   The standard for demonstrating "widespread abuse" is high—the deprivations must be "obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990).  Clark has not presented evidence of continual deprivation of care, implementation of a policy of delay, or a direction by either Sheffield or Barrentine to the SCM or other subordinates to delay treatment of his knee.

We conclude that the undisputed evidence, viewed in the light most favorable to Clark, does not show that the defendants refused to treat Clark or were deliberately indifferent to his medical needs.  We affirm summary judgment in favor of Sheffield and Barrentine.

15

IV.

Finally, Clark argues that the District Court erred by not considering the materials he submitted after the magistrate report.  Even in pro se cases, a district court has wide discretion in considering arguments and evidence not presented to a magistrate judge.  *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009).  The District Court did not abuse its discretion in refusing to consider the evidence Clark submitted nearly two weeks after the magistrate's report.  The District Court concluded the Clark had enough time to develop the record before the magistrate.  Furthermore, Clark does not explain how consideration of this information would have altered the District Court's conclusions.

**AFFIRMED.**