[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14710
Non-Argument Calendar
_____

D.C. Docket No. 4:14-cv-01424-AKK-HGD


BILLY W. REID,

Plaintiff-Appellee,

versus

BRIAN STREIT,
Sgt., Deputy with, Jefferson County Sheriff's Office,
WEBBER,
Deputy with Jefferson County Sheriff's Office,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(June 21, 2017)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

Billy Reid, proceeding pro se, sued Sergeant Brian Streit and Deputy Jonathan Webber under 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs in violation of his Fourteenth Amendment rights.  He asserted those claims against the officers in their official and individual capacities, seeking declaratory, injunctive, and monetary relief.  The officers filed a motion for summary judgment, raising the doctrines of sovereign and qualified immunity. The district court denied that motion and the officers now appeal.[1]

I.

On July 30, 2012, at around 8:00 P.M., Streit and Webber arrived at Reid's home intending to question him about some allegations his girlfriend had made, including that Reid had punched a wall with his right hand during an argument, had held her against her will, had beaten her, and had raped her.[2]  Reid was in his backyard when the officers arrived, and when he heard someone yell at him, he began running away.  Webber chased him, and after Reid ignored his commands to stop, Webber shot him with a taser gun, causing Reid to fall to the ground.  Reid used his already-injured right hand to help break his fall, which exacerbated the injury he had sustained by punching the wall a few days earlier.  Although Reid

---

[1] We have interlocutory appellate jurisdiction over the denial of immunity.  See Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985).

[2] At the summary judgment stage, we must view the evidence in the light most favorable to the non-moving party, keeping in mind that "what we state as 'facts' in this opinion for purposes of reviewing the ruling on the summary judgment motion[ ] may not be the actual facts." Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995).

2

began complaining about the pain in that hand, the deputies placed him in handcuffs and transported him to a police substation for questioning.

Upon their arrival at that substation, Reid continued complaining and requested medical attention for his hand because it was red, swollen, and causing intense pain.  Webber contacted Streit, who had left the substation to obtain a search warrant for Reid's home, and Streit instructed Webber to call the paramedics.  Webber did so and after the paramedics arrived and examined Reid's hand, they informed Webber and Reid that the injury was too severe for them to treat and that Reid should be taken to the hospital immediately.  Webber again called Streit and told him what the paramedics had said, and Streit instructed Webber not to take Reid to the hospital and to stay at the substation so that Streit could interview him.  Sometime later, Streit arrived back at the substation, ate dinner, and then interviewed Reid.

That interview began at 12:31 A.M., about four and a half hours after Reid was apprehended.  Before the interview began Streit told Reid that he would not receive medical care until he gave a "satisfactory statement."  After completing the hour-long interview, and after reviewing the evidence found at Reid's home, Streit told Reid that he was under arrest.  Streit then notified Webber that after the necessary arrest paperwork was completed, Webber could take Reid to the hospital.  Reid was placed in a holding cell while Streit began that paperwork.

3

While the accounts differ as to how Reid escaped from that holding cell, he did and left the substation without permission at around 2:30 A.M, went home, and took some pain medicine.  When he woke up later that day, he went to the emergency room but was turned away because he could not provide proof of insurance and did not have the money to pay for treatment.

Reid was arrested about two weeks later.  Following his arrest, he received medical treatment, was diagnosed with a "[b]oxer's type fracture" on his right hand, and eventually received orthopedic surgery to reset the bone and stabilize the hand with a titanium plate and screws.  According to Reid, his hand is now "permanently impaired."

## II.

"We review de novo a district court's denial of summary judgment based on [the doctrine of] immunity, applying the same legal standards that governed the district court."  Feliciano v. City of Miami Beach, 707 F.3d 1244, 1247 (11th Cir. 2013); see also Pellitteri v. Prine, 776 F.3d 777, 779 (11th Cir. 2015).  "Summary judgment is appropriate when the record evidence, including depositions, sworn declarations, and other materials, shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Feliciano, 707 F.3d at 1247 (quoting Fed. R. Civ. P. 56(a)).

A.

The officers first contend that Reid lacks standing to pursue his equitable claims against them in their official capacities.[3]  Standing "is a threshold jurisdictional question which must be addressed prior to and independent of the merits of a party's claims."  AT&T Mobility, LLC v. NASCAR, 494 F.3d 1356, 1359 (11th Cir. 2007) (quotation marks omitted).  And although the officers did not clearly raise this standing argument in the district court, the question of a party's standing "is not subject to waiver" and we have "an independent obligation to examine [our] own jurisdiction."  Bischoff v. Osceola Cty., 222 F.3d 874, 877–78 (11th Cir. 2000) (quotation marks omitted).  As is the case here, "when standing is questioned for the first time by an appellate court, standing must affirmatively appear in the record."  Region 8 Forest Service Timber Purchasers Council v. Alcock, 993 F.2d 800, 806 (11th Cir. 1993) (quotation marks omitted).

The injunctive and declaratory relief Reid seeks is forward-looking, and as a prospective remedy it "will provide no relief for an injury that is, and likely will remain, entirely in the past."  Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir. 1994) (quotation marks omitted).  As a result, to establish standing to seek injunctive and declaratory relief, Reid must demonstrate "a sufficient

---

[3]  They also contend that they are entitled to sovereign immunity from Reid's official capacity claims for monetary damages.  Reid does not dispute that contention.  The district court did err in denying the officers summary judgment on Reid's official capacity claims seeking monetary relief.  See Carr v. City of Florence, 916 F.2d 1521, 1525–27 (11th Cir. 1990).

likelihood that he will be affected by the allegedly unlawful conduct in the future."
Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1283 (11th Cir.
2001); see Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1346 (11th
Cir. 1999).

The record evidence does not show any likelihood that Reid will again
encounter and be injured by Streit or Webber's deliberate indifference to his
serious medical needs. And there is no indication that, were we to remand for the
district court to develop the record further as to standing, Reid would be able
submit additional evidence to demonstrate otherwise. As a result, Reid lacks
standing to pursue his equitable claims for injunctive and declaratory relief against
the officers in their official capacities.

### B.

As to Reid's claims for monetary relief against Streit and Webber in their
individual capacities, the officers contend that they are entitled to qualified
immunity. The doctrine of qualified immunity "allow[s] government officials to
carry out their discretionary duties without the fear of personal liability or
harassing litigation, protecting from suit all but the plainly incompetent or one who
is knowingly violating the federal law." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th
Cir. 2002) (quotation marks and citation omitted).

To obtain qualified immunity, Streit and Webber first must show that they were acting within their discretionary duty.  Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1352 (11th Cir. 2015).  The parties agree that they were.  To overcome qualified immunity, Reid must show (1) that the officers violated his constitutional rights and (2) that "the law clearly established those rights at the time of the alleged misconduct."  Id. at 1352–53 (quotation marks omitted).

We first address whether a reasonable jury could find that the officers acted with deliberate indifference to Reid's serious medical needs in violation of his Fourteenth Amendment due process rights.  A plaintiff bringing a deliberate indifference to a serious medical need claim must show:  "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  Mann v. Taser Intern., Inc., 588 F.3d 1291, 1306–07 (11th Cir. 2009).  Further, "[w]hen [officers] ignore without explanation a . . . serious medical condition that is known or obvious to them, the trier or fact may infer deliberate indifference."  Brown v. Hughes, 894 F.2d 1533, 1538 (11th Cir. 1990).

The officers do not dispute that Reid's broken hand was a serious medical need.  They instead dispute whether they had any duty to provide medical treatment for an injury sustained before they took Reid into custody and, if they

7

did, whether they were deliberately indifferent to that need and whether that indifference caused Reid's injury.

As to the officers' first contention — that they had no duty to provide medical care for an injury sustained before they took Reid into custody — they base that argument on their version of the facts, which is that Reid's fall during his capture did not worsen his pre-existing injury.  Taking the facts, as we must, in the light most favorable to Reid, a jury could infer that his fall after being shot with the taser further injured his hand.  The Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to [those] who have been injured while being apprehended by the police."  Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244, 103 S. Ct. 2949, 2983 (1983).  As a result, Streit and Webber had a duty not to act with deliberate indifference to Reid's hand injury.

As to the officers' second contention — that even if they had a duty to treat Reid's hand injury they did not act with deliberate indifference — the deliberate indifference element of Reid's claims requires:  "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence."  McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999).

The officers had subjective knowledge of a risk of serious harm.  Reid consistently complained about the pain he was experiencing, and paramedics told

Webber (who in turn told Streit) that Reid's hand was broken and that he should be taken immediately to a hospital. And the evidence shows that the officers disregarded that risk by keeping Reid at the substation. Indeed, they waited four and a half hours after he arrived to interview him and told him that he would not be taken to the hospital until he provided a "satisfactory statement."

By delaying taking Reid to the hospital, Streit and Webber acted intentionally, not negligently. They knew that Reid's hand was seriously injured, and DVD footage of Streit's interview of Reid shows Reid bent over at his waist cradling his right hand with his left hand. Not only that but during the interview Reid more than once told Streit that he was in immense pain.

While "[t]he tolerable length of delay in providing medical attention depends on the nature of the medical need and the reason for the delay," Harris v. Coweta Cty., 21 F.3d 388, 393–94 (11th Cir. 1994), the evidence does not show that the officers had a good reason to delay taking Reid to the hospital. Streit's affidavit explains that, during the four and a half hour period between taking Reid to the substation and interviewing him, Streit was procuring and executing a search warrant of Reid's home. But there is no evidence explaining what Webber was doing while waiting for Streit to interview Reid. And the officers have provided no reason why Webber could not have taken Reid to the hospital while Streit

searched Reid's home.[4]  As a result, the delay in treating Reid was at best unexplained, and "an unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference."  Brown, 894 F.2d at 1538; see also Harris, 21 F.3d 394 ("A few hours' delay in receiving medical care for emergency needs such as broken bones . . . may constitute deliberate indifference.").

Streit and Webber also contend that Reid cannot show that their deliberate indifference caused his injury.  While there is no evidence showing that the officers' delay caused the need for Reid's surgery, a jury could find from the evidence that Reid suffered from extreme pain that night in the substation and the officers did nothing to alleviate it.  "Our cases . . . have recognized that [officers] may violate the [Constitution]'s commands by failing to treat an inmate's pain" and letting him needlessly suffer.  McElligott, 182 F.3d at 1257.  Even if the officers' delay in treating Reid's hand did not cause the need for Reid's hand surgery, a reasonable jury could find that the delay caused him unnecessary pain.  As a result, a genuine issue exists as to whether the officers acted with deliberate indifference to Reid's serious medical needs in violation of his Fourteenth Amendment rights.

---

[4]  Although Streit may have had an explanation for why he personally could not have taken Reid to the hospital — he was busy searching Reid's home — he was aware that Reid needed to go to the hospital.  And he specifically instructed Webber not to take Reid to the hospital and instead to wait for Streit to return so that he could interview Reid.

10

Streit and Webber concede the law is clear that the Constitution requires "the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." City of Revere, 463 U.S. at 244, 103 S. Ct. at 2983.  And at the time of the violation the law was clearly established that an "unexplained delay of hours in treating a serious injury states a prima facie case of deliberate indifference." Brown, 894 F.2d at 1538.  And, again, there is nothing in the record to explain why Webber could not have taken Reid to the hospital.  Based on the facts as we must take them at this summary judgment stage of the proceedings, Streit and Webber are not entitled to qualified immunity, and the district court properly denied them summary judgment on Reid's claims against them in their individual capacities.

**AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**